UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>JAMES W. EDWARDS,<br><br>      Defendant. | Criminal Action No.  03-0234 (JDB) |

## MEMORANDUM OPINION

Following his conviction at a jury trial on narcotics and firearm offenses, defendant was sentenced to 79 months imprisonment on April 13, 2004 under the then-mandatory Federal Sentencing Guidelines.[1]  He subsequently appealed the conviction and sentence.  In the intervening time, the Supreme Court decision in United States v. Booker, 543 U.S. 220 (2005), was issued, changing the landscape of federal sentencing by holding that mandatory application of the Guidelines in certain circumstances violates the Sixth Amendment and remedying the violation by making the Guidelines advisory only.  On September 30, 2005, the Court of Appeals affirmed defendant's conviction but remanded the case to this Court "'for the limited purpose of allowing it to determine whether it would have imposed a different sentence, materially more favorable to the defendant, had it been fully aware of the post-Booker sentencing regime.'" United States v. Edwards, 424 F.3d 1106, 1108 (D.C. Cir. 2005) (quoting United States v. Coles, 403 F.3d 764, 771 (D.C. Cir. 2005) (per curiam)).

  Defendant contends that a two-level enhancement to the Guidelines base offense level, based on the Court's finding that he possessed a firearm during the drug offense, violates his

---

[1] Defendant also was sentenced to a three-year period of supervised release which has not been contested.

Sixth Amendment right to trial by jury because he was acquitted on the firearm charge. Otherwise, defendant agrees that the advisory Guidelines range was correctly calculated. Thus, the issue presented is whether, in the exercise of its discretion and consistent with Booker, a sentencing court may increase the advisory Guidelines range based on acquitted conduct proven by a preponderance of the evidence. As the Court of Appeals noted, the practice was upheld against a Fifth Amendment double jeopardy challenge in United States v. Watts, 519 U.S. 148, 157 (1997), but the Supreme Court has not determined whether the practice violates the Sixth Amendment. Edwards, 424 F.3d at 1108.

   Although the parties have submitted supplemental sentencing memoranda, both sides have focused more on whether a departure below the advisory Guidelines range is warranted than on the constitutionality of sentencing enhancements based on acquitted conduct. Indeed, neither side makes any reference to the rapidly-growing body of case law on this important, complex issue. The Court has reviewed the parties' appellate briefs, which frame the issue of acquitted conduct with more clarity than do the briefs to this Court (albeit not substantially more), and has conducted an independent review of the case law. After due consideration of the debate on this issue, the Court concludes that Booker leaves intact the long-standing authority of the sentencing judge to consider acquitted conduct proven by a preponderance of the evidence, without violating the Sixth Amendment. Thus, as explained below, the Court determines that defendant's advisory Guidelines range was properly calculated with a two-level increase in the offense level based on acquitted conduct. The Court further determines that, had it been fully aware of the post-Booker advisory sentencing regime at the time of the sentencing, the Court would have imposed the same sentence.

## BACKGROUND

On January 22, 2004, following a jury trial, defendant was convicted of unlawful possession with intent to distribute phencyclidine (PCP) under 21 U.S.C. §§ 841(a)(1)(A) and 841(b)(1)(C) and acquitted of using, carrying, and possessing a firearm during a drug trafficking offense under 18 U.S.C. § 924(c)(1).  The jury was unable to reach a unanimous verdict on the charge of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1)).

The Presentence Report recommended a base offense level of 20 for the 58.9 net grams of phencyclidine on which the defendant was convicted.  Two points were then added to the base offense level for defendant's possession of a firearm in connection with the distribution offense.  With a total offense level of 22, and a criminal history category of V, the Guidelines range was 77 to 96 months imprisonment.

At the sentencing hearing, the Court found by a preponderance of the evidence that the defendant had possessed a firearm during commission of the distribution offense.  Hearing Tr. at 18-21 (April 13, 2004) ("Tr.").  The Court's finding was supported by evidence that showed defendant was in the driver's seat of the car at the time of the arrest, and that two guns were under the driver's seat.  Id. at 18.  The Court credited the testimony of two officers who observed defendant making downward movements pushing the guns back under the seat in an apparent attempt to conceal them, and also considered defendant's previous conviction of possession of a handgun as evidence relevant to his knowledge, intent, and absence of mistake in possessing the guns.  Id. at 18-20.

Defendant asserted on appeal, as he does now, that an enhancement based on acquitted conduct --  possession of a firearm -- is prohibited under the Sixth Amendment and Booker (see

Edwards, 424 F.3d at 1108), and thus asks the Court to begin with an advisory Guidelines range of 63-78 months based on an offense level of 20. Defendant further asserts that some unidentified sentence below the Guidelines range is "sufficient, but not greater than necessary" to comply with the factors set forth in 18 U.S.C. § 3553(a). The government contends that, as a sentence within the Guidelines range, the original sentence is presumptively reasonable, and that the Court's specific findings with respect to the nature and circumstances of the offense and the history and characteristics of defendant further support the original sentence.

## DISCUSSION

**A.    Acquitted Conduct**

Defendant's principal argument, as outlined in his appellate brief, is that the Court denied his right to trial by jury under the Sixth Amendment when it increased his sentence based on conduct for which he was acquitted. See Edwards, 424 F.3d at 1108. Defendant contends that such an enhancement violates the holding of Blakely v. Washington, 542 U.S. 296, 304 (2004), and presumably Booker, that a sentencing judge exceeds his authority when he "inflicts punishment that a jury's verdict alone does not allow because the jury has not found the essential facts upon which the sentence is based." See Appellant's Br. at 14 (citing Blakely, 542 U.S. at 304). The Court of Appeals, in remanding this case, identified this as a "potentially important question" that may require further consideration, and posed the question whether Watts, which sanctioned the use of acquitted conduct to increase a sentence against a double jeopardy challenge, has any relevance to the Sixth Amendment issue. Edwards, 424 F.2d at 1108-09 (noting that Booker stated that the Sixth Amendment issue was not presented in Watts).

Defendant fails to recognize the impact of an advisory -- rather than mandatory -- Guidelines range on his Sixth Amendment argument. Booker consisted of two decisions -- the

majority opinion by Justice Stevens adjudicating the merits of the Sixth Amendment issue, and the majority opinion by Justice Breyer setting forth the remedy consisting of invalidating the provisions of the Sentencing Reform Act that make the Guidelines mandatory.  See Coles, 403 F.3d at 766 (citing United States v. Crosby, 397 F.3d 103, 107-10 (2d Cir. 2005)).  As to the Sixth Amendment issue, the holding is clear:  any fact necessary to support a sentence exceeding "the maximum authorized" by a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.  543 U.S. at 244.  But the remedial opinion in Booker changed this construct in a key regard by transforming the Guidelines from mandatory to advisory.  The "maximum [sentence] authorized" by a jury verdict, after Booker, is not the top of the now-advisory Guidelines range for the convicted offense, but rather the statutory maximum for the offense under the United States Code -- which is often much higher than the Guidelines range.  United States v. Duncan, 400 F.3d 1297, 1303 (11th Cir. 2005); Crosby, 397 F.3d at 109 n.6; see also United States v. Alston-Graves, 435 F.3d 331, 342-43 (D.C. Cir. 2006) (rejecting defendant's claim that her exposure to the statutory maximum as a result of retroactive application of Booker violated due process or ex post facto principles).  Thus, as long as the sentencing judge imposes a sentence within the statutory range (i.e., one that does not exceed the statutory maximum), sentencing based on judge-found facts by a preponderance of the evidence does not violate the Sixth Amendment.  The jury verdict itself supports a sentence up to that statutory maximum.  Indeed, the Supreme Court in Booker explained the absence of any Sixth Amendment problem in an advisory sentencing regime:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad

> discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

543 U.S. at 233 (citations omitted).

Here, the sentence authorized by the jury verdict is 20 years -- the maximum sentence for possession with intent to distribute phencyclidine under 21 U.S.C. § 841(a)(1) and (b)(1)(C). The 79-month sentence imposed is well within the maximum statutory sentence authorized by the jury verdict, and thus the two-level enhancement based on the Court's factual findings regarding defendant's possession of the weapon neither deprives defendant of having his sentence authorized by the jury verdict nor violates the Sixth Amendment.[2]

---

[2] Defendant's contention that his sentence must be based on facts proven beyond a reasonable doubt might also be framed as a Fifth Amendment due process claim. But such a claim would fare no better. "It is well-established that 'due process is satisfied so long as facts necessary for sentencing are proved by a preponderance of the evidence.'" See United States v. Boney, 977 F.2d 624, 636 (D.C. Cir. 1992) (quoting United States v. Burke, 888 F.2d 862, 869 (D.C. Cir. 1989)). Nothing in Booker undermines this precedent. To the contrary, Justice Breyer's remedial opinion in Booker approved of extra-verdict enhancements under an advisory regime, with no mention of a change in the widely-used preponderance standard. See Booker, 543 U.S. at 264. Accordingly, other courts also have concluded after Booker that sentencing enhancements based on facts proven by a preponderance of the evidence are consistent with due process, so long as they are otherwise consistent with Booker. See United States v. Vaughn, 430 F.3d 518, 525 (2d Cir. 2005) (rejecting due process challenge, and noting that "'judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker'") (quoting United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005)); United States v. Fisher, -- F. Supp. 2d --, 2006 WL 47067, *5 (D. Del. 2006) (holding that "it would not be an infringement of [defendant's] due process rights to impose a sentence . . . based on facts found by a preponderance of the evidence," so long as the Guidelines are not applied in a mandatory manner).

Defendant nonetheless suggests that the enhancement of his sentence based on acquitted conduct somehow disregards the jury verdict of acquittal in violation of the Sixth Amendment. See Appellant's Br. at 14. It bears noting that defendant makes this claim in the context of long-established statutory and judicial authorization of enhancements based on consideration of acquitted conduct. See Watts, 519 U.S. at 151-52. Congress codified the broad discretion of sentencing courts to consider a wide range of information at 18 U.S.C. § 3661, which provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Congress has further provided that the "nature and circumstances of the offense" must be considered under 18 U.S.C. § 3553(a). The remedial opinion in Booker left these provisions intact, subject to the limitation that the sentence must be within the statutory maximum authorized by the jury verdict. Moreover, "under the pre-Guidelines regime, 'it was well-established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant had been acquitted.'" Watts, 519 U.S. at 152 (quoting United States v. Donelson, 695 F.2d 583, 590 (D.C. Cir. 1982) (Scalia, J.)). Thus, the only question is whether some principle articulated in Booker has changed this landscape. To answer this question, the Court looks first to Watts and Booker, and then to post-Booker decisions.

As noted earlier, the Supreme Court has upheld the practice of enhancing sentences based on acquitted conduct proven by a preponderance of the evidence in the context of a Fifth Amendment double jeopardy challenge. See Watts, 519 U.S. at 157 ("a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"). Although the

D.C. Circuit panel in this case briefly questioned whether <u>Watts</u> has any relevance to the Sixth Amendment issue, the panel did not explore the issue beyond noting that <u>Watts</u> did not determine whether enhancement of a sentence based on acquitted conduct violates the Sixth, rather than the Fifth, Amendment.  See <u>Edwards</u>, 424 F.3d at 1108.  However, the logic of <u>Watts</u> is instructive on the Sixth Amendment issue as well, and strongly suggests that the Sixth Amendment challenge lacks merit.

In <u>Watts</u>, the Supreme Court first explained that a defendant receiving an enhanced sentence based on acquitted conduct is not being punished for the acquitted conduct as an offense distinct from the convicted offense:

> "[C]onsideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." Rather, the defendant is "punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment."

519 U.S. at 155 (emphasis in original) (quoting <u>Witte v. United States</u>, 515 U.S. 389, 401, 403 (1995)).  The Court then also emphasized that an acquittal does not necessarily represent a jury rejection of any particular facts and, moreover, does not prove innocence:

> We have explained that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of reasonable doubt as to his guilt." . . . [I]t is impossible to know exactly why a jury found a defendant not guilty on a certain charge.

<u>Id.</u> (quoting <u>United States v. One Assortment of 89 Firearms</u>, 465 U.S. 354, 361 (1984)). Thus, the government is not precluded by the jury verdict from relitigating an issue related to the acquitted conduct at sentencing, where a lower standard of proof applies.  <u>Watts</u>, 519 U.S. at 156.

The analysis in Watts as to the criminal offense reached by the punishment and the meaning of the verdict is instructive on whether the Sixth Amendment right to a jury trial has been violated, because the Sixth Amendment involves similar concerns -- that is, the right to a jury determination as to a defendant's guilt "on every element of the crime with which he is charged, beyond a reasonable doubt" (Apprendi v. New Jersey, 530 U.S. 466, 477 (2000); Booker, 543 U.S. at 230), and the principle that "the judge's authority to sentence derives wholly from the jury's verdict" (Blakely, 542 U.S. at 306).  To put it another way, the concern over enhancements based on acquitted conduct would pose a Sixth Amendment problem if the defendant were being punished for the acquitted offense (for he would then be deprived of his right to trial by jury on that offense), or if consideration of the conduct is inconsistent with the jury verdict of acquittal (for the sentence would then not be authorized by the verdict). However, as discussed above, Watts informs us that sentencing enhancements based on acquitted conduct pose neither problem.  Considering that a defendant is being punished only for the offense of which he has been tried and convicted, and that the acquittal does not represent a factual finding as to whether the defendant engaged in the acquitted conduct, an enhancement of the sentence for the convicted offense based on relevant acquitted conduct proven only by a preponderance of the evidence does not present a Sixth Amendment violation.

There is no inconsistency between Watts and Booker, for the Sixth Amendment right, as clarified in Booker and its predecessors, is not a right to have a jury determine all facts affecting sentencing, but rather the right of a defendant to have a jury determine, by proof beyond a reasonable doubt, any fact that increases the penalty for the crime charged beyond the statutory maximum.  See Booker, 543 U.S. at 232-33; Blakely, 542 U.S. at 304;  Apprendi, 530 U.S. at 490; see also Coles, 403 F.3d at 769 ("the error under Booker 'is the mandatory use of the

9

Guidelines enhancement, not the fact of the enhancement'") (quoting United States v. Williams, 399 F.3d 450, 458 (2d Cir. 2005)). Booker itself provides strong support for enhancement of sentences based on acquitted conduct. See, e.g., 543 U.S. at 233 ("when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant"). Indeed, Justice Stevens' majority opinion on the Sixth Amendment discussed Watts without questioning the continued vitality of its logic, indicating that the principles articulated in that decision remain good law.[3] See 543 U.S. at 240. The majority remedial opinion of Justice Breyer confirms that judges retain the authority, in an advisory Guidelines regime, to determine facts and relevant conduct for purposes of the traditional judicial role in sentencing. See id. at 246-52; see also United States v. Santiago, 413 F. Supp. 2d 307, 317-18 (S.D.N.Y. 2006).

Every federal circuit that has addressed post-Booker the issue of sentencing enhancements based on judge-found facts regarding acquitted conduct has concluded that such enhancements do not violate the Sixth Amendment right to a jury trial so long as the sentence is within the statutory range authorized by the jury's verdict -- the lynchpin of Booker itself. See United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005) ("district courts may find facts relevant to a sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury's verdict, or (3) a mandatory minimum sentence under [21 U.S.C.] § 841(b) not

---

[3] Justice Stevens did disclaim that Watts was relevant to the Sixth Amendment issue, noting that it "presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument." See Booker, 543 U.S. at 240 & n.4. However, he did not fault any of the reasoning underlying Watts. Id.

authorized by the jury verdict"); United States v. Price, 418 F.3d 771, 777-78 (7th Cir. 2005) (rejecting claim that enhancement based on acquitted conduct violated the Sixth Amendment); United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005) ("we conclude that when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations [of acquittal] reached through application of the more onerous reasonable doubt standard"); United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir. 2005) ("Booker does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict").  Each of these courts also has concluded that the logic of Watts continues to apply after Booker -- i.e., that enhancements based on acquitted conduct do not conflict with a jury verdict of acquittal-- and that Watts is persuasive authority as to whether sentencing enhancements for acquitted conduct comport with the Sixth Amendment. See, e.g., Vaughn, 430 F.3d at 525-26; Price, 418 F.3d at 787-88; Magallanez, 408 F.3d at 684; Duncan, 400 F.3d at 1304.

The Court recognizes that a handful of district courts have held, after Booker, that enhancements based on acquitted conduct subject to the lesser preponderance standard are inconsistent with the Sixth Amendment right to trial by jury. See United States v. Pimental, 367 F. Supp. 2d 143, 149-154 (D. Mass. 2005); United States v. Coleman, 370 F. Supp. 2d 661, 668-73 (S.D. Ohio 2005); United States v. Baldwin, 389 F. Supp. 2d 1, 2 (D.D.C. 2005).[4]  These

---

[4] Pimental frames the analysis in terms of whether acquitted conduct may be considered at all after Booker (367 F. Supp. 2d at 146, 149-54), and concludes it may not, whereas Coleman and Baldwin purport to allow consideration of acquitted conduct but subject to the more stringent reasonable doubt standard, in order to respect the jury verdict of acquittal. Coleman, 370 F. Supp. 2d at 668; Baldwin, 389 F. Supp. 2d at 2. As Coleman acknowledges, however, imposition of the higher standard of proof is another means of expressing a rule against

(continued...)

decisions are driven primarily by the belief that enhancements based on acquitted conduct are inconsistent with the underlying premise of Booker (and its predecessors) that a judge's determination at sentencing "must be guided by the jury verdict" -- the acquittal as well as the conviction.  See Coleman, 370 F. Supp. 2d at 670 (in a sentencing regime considering acquitted conduct, "the jury is essentially ignored when it disagrees with the prosecution"); Pimental, 367 F. Supp. 2d at 152 ("To consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' -- which is what a jury decides -- in a way that is inconsistent with the tenor of recent case law."); Baldwin, 389 F. Supp. 2d at 2 (expressing agreement with Coleman and Pimental without discussing contrary appellate decisions).

This Court believes that the fatal flaw in these cases is the premise that an acquittal indicates a finding of "innocence" or a "disagreement" with the prosecution. The Supreme Court in Watts rejected this characterization of acquittal: "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of reasonable doubt as to his guilt." 519 U.S. at 155 (citations omitted).  The Court further explained that "[a]n acquittal is not a finding of any fact," but rather "only an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt," and thus "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty."  Id. (citations

---

[4](...continued)
consideration of acquitted conduct.  370 F. Supp. 2d at 672 (reasoning that "considering acquitted conduct would disregard completely the jury's role in determining guilt and innocence" in explaining adoption of reasonable doubt standard).  Elaborating on his Baldwin decision in a subsequent case, Judge Friedman of this District has explained his view that acquitted conduct should not be considered in sentencing, and under a reasonable doubt standard could not be.  See United States v. Garris, No. 03-268 (D.D.C. Feb. 10, 2006), Tr. at 35-44 ("If the criminal justice system means anything, it ought to mean that once somebody is acquitted of something, that ought to have no bearing on sentencing," and later noting that under the reasonable doubt standard, enhancement based on acquitted conduct "becomes sort of a metaphysical impossibility if one wants to respect the jury because they have already found to the contrary.").

omitted).  Because a jury verdict of acquittal does not represent any particular factual finding, it does not preclude the consideration of acquitted conduct at sentencing.[5]  Id. at 156.  It is entirely consistent with a verdict of acquittal to find that a defendant engaged in conduct underlying the acquitted charge based on the preponderance of the evidence.  See Santiago, 413 F. Supp. 2d at 319 (discussing, as an example, consistency of court finding at sentencing that a defendant possessed a weapon during commission of a drug offense, where jury has acquitted defendant of "using" a firearm "in relation to" a drug offense).

These cases also are at odds with judicial decisions validating sentence enhancements based on acquitted conduct in the years before the Guidelines existed.  See Watts, 519 U.S. at 152 (noting that consideration of acquitted conduct was "well established" in the pre-Guidelines sentencing regime).  In Pimental, the court recognized there was at least facially some tension in disallowing acquitted conduct in the now-advisory Guidelines regime, given that the practice had been widely upheld in the pre-Guidelines discretionary regime.  367 F. Supp. 2d at 151-52.  The court attempted to resolve that tension by characterizing the present advisory Guidelines regime as not a truly discretionary regime, but rather a "hybrid" regime where certain facts -- like acquitted conduct -- have determinate sentencing consequences.  Id. at 152.  This

---

[5] The district court cases referenced also express concern over situations where dramatic enhancements based on acquitted conduct become a "'tail which wags the dog of the substantive offense.'"  Coleman, 370 F. Supp. 2d at 672 n.15 (quoting Blakely, 542 U.S. at 307).  But presumably, in those cases where enhancements become unreasonable in relation to the convicted offense, a sentencing court would depart from the advisory Guidelines range pursuant to the provision in 18 U.S.C. § 3553(a) requiring a court to consider the need for the sentence imposed  "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See also Vaughn, 430 F. 3d at 527 (upholding enhancement of sentence based on acquitted conduct but suggesting that "the weight and quality of the evidence" and "sentence severity" should be considered along a continuum in determining a reasonable sentence).  In any event, this case does not present a situation where a sentencing enhancement is even arguably unreasonable in relation to the substantive offense, and thus the Court need not address whether an exceptional case would warrant a different result.

characterization, however, fails to give due regard to the discretion a judge may now exercise in weighing the factors under 18 U.S.C. § 3553(a).  That discretion is, of course, not as broad as in the pre-Guidelines era, but the role of acquitted conduct in the pre-Guidelines regime was not dependent on the presence of unbounded discretion, but rather on the need for the sentencing judge to consider "all matters bearing upon the personal history and behavior of the convicted accused," including "the overall circumstances of the offenses," in determining an appropriate sentence.  Billiteri v. United States Parole Bd., 541 F.2d 938, 944 (4th Cir. 1976).

  Having determined that enhancement of a sentence may, consistent with the Sixth Amendment, be based on acquitted conduct found by a preponderance of the evidence, the Court concludes that defendant's base offense level of 20 was appropriately increased by two levels for possession of a firearm during the drug offense, notwithstanding the jury's verdict of acquittal on the charged firearm offense.  Thus, the Guidelines range was appropriately calculated at 77 to 96 months imprisonment.

**B.**  **Application of Factors in 18 U.S.C. § 3553(a)**

  With that advisory Guidelines range, the Court must determine under the Court of Appeals' remand whether a different sentence, more favorable to defendant, would have been imposed had this Court been aware of the post-Booker sentencing regime.  To determine whether the Court would have imposed the same 79-month sentence under the advisory Guidelines regime established by Booker, this Court will apply the two-step analysis widely used for post-Booker sentencings:  "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." See United States v. Doe, 412 F. Supp. 2d 87,

90 (D.D.C. 2006) (discussing cases) (citations omitted) . As noted above, assuming that the Court's resolution of the acquitted conduct issue is correct, the parties are in agreement that the Guidelines range is 77 to 96 months imprisonment. The Court is left, then, with the question whether any case-specific considerations under 18 U.S.C. § 3553(a) would have caused it to impose a sentence "materially more favorable to the defendant, had it been fully aware of the post-Booker sentencing regime." Edwards, 424 F.3d at 1108.

The Court has previously considered the sentencing factors identified in § 3553(a), including the nature and circumstances of the offense, and the history and characteristics of the defendant -- the very factors relied upon by defendant, then and now, to justify a sentence below the Guidelines.[6] In so doing, the Court weighed the following information, which has remained the same on this limited remand:

> [P]ossession of phencyclidine with intent to distribute is a serious offense. It is obviously something that is of concern to the community and to the Court in the criminal justice system.

---

[6] Under the statute, judges must consider the following factors (in addition to the Guidelines and the policy statements of the United States Sentencing Commission):

- "the nature and circumstances of the offense and the history and characteristics of the defendant;"

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner";

- "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

- "the need to provide restitution" to victims.

See 18 U.S.C. § 3553(a)(1)-(2), (6)-(7).

> It is also noteworthy to the Court that there are several prior convictions, and as counsel has pointed out those convictions do add up to a pretty high criminal history, given the nature of some of the convictions.
> But, nonetheless, there is a lengthy history of connection with the criminal justice system, and some of those offenses do give the Court concern. I am concerned about an offense of escape. It was an escape from a halfway house, but nonetheless, escapes are serious issues.
> The prior possession of a handgun is a serious issue, and the [defendant's] difficulties with parole or probation and compliance are also facts that the Court is not blind to. It's also true that there is no real prior employment history here, and that is of concern to the Court.
> On the other hand . . . . certainly an explanation for some of these events and problems is at least in part drug use, both marijuana and phencyclidine, and addressing that is obviously an important thing for you, Mr. Edwards, and for the Court to keep in mind and try to accomplish.
> I also am aware of the fact that you have a young child and that both you and some of your family members have been very strong in their view that you wish to be a good father for that child, and obviously, if that could be accomplished through any facet of sentencing, I would like to see that accomplished.
> I note as well that you do not have readily marketable job skills or education, and on the drug issue, there is not a good history of drug use here. There's been quite a bit of drug use and abuse.
> There's some family support, which I hope will continue. . .
> With respect to this offense, it is true that it was basically conceded. It wasn't really contested at trial. On the other hand, it wasn't conceded in a way that winds up giving the defendant any credit for that. . . . And maybe that means that the Court should take it into consideration.
> In any event, when I add all those things, including the fact that, as I have concluded, a handgun was possessed in the course of this drug conviction, I believe that the appropriate sentence is near the bottom of the sentencing guidelines. . . . I think the interest of the criminal justice system and the interests of your rehabilitation and future are appropriately served by a sentence near, but not at, the very bottom of the guideline range, and that is where the Court will impose sentence.

Tr. at 27-29.

The Court has carefully considered once again whether the nature and circumstances of the offense, or the history and characteristics of the defendant, as well as the other § 3553(a) factors, warrant a departure below the now-advisory Guidelines range, and has concluded that they do not. Although defendant's drug addiction contributed to his involvement in the offense, other aggravating circumstances -- in particular, defendant's lengthy criminal history, his history of noncompliance with parole conditions, his escape from a halfway house, his extensive drug use, and the seriousness of the offense -- weigh heavily against a sentence below the advisory Guidelines range of 77 to 96 months, or even at the absolute lowest end of the range. Based on these same considerations, the Court confirms that, in the exercise of its discretion in weighing the § 3553(a) factors, it would not have imposed a different sentence had it been fully aware of the post-<u>Booker</u> sentencing regime at the time of sentencing. The Court concludes that a sentence of imprisonment for 79 months (along with an uncontested three-year period of supervised release) was and remains a sentence "sufficient, but not greater than necessary" (18 U.S.C. § 3553(a)) to comply with those factors.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that the two-level enhancement to the advisory Guidelines range based on acquitted conduct does not offend the Sixth Amendment or <u>Booker</u>. The Court further confirms that a sentence of 79 months imprisonment and a three-year period of supervised release is an appropriate and reasonable sentence under 18 U.S.C. § 3553(a), and that the Court would have imposed that sentence had it been fully aware of the post-<u>Booker</u> sentencing regime at the original time of sentencing.

/s/
JOHN D. BATES
United States District Judge

Dated:   April 7, 2006

Copies to:

Thomas Abbenante
1919 Pennsylvania Ave., NW
Washington, DC 20006

Angela Schmidt
U.S. Attorney's Office
555 Fourth St., NW
Washington, DC 20004

Patricia Heffernan
U.S. Attorney's Office
555 Fourth St., NW
Washington, DC 20004

Walter S. Booth
4550 Montgomery Ave.
Suite 601-N
Bethesda, MD 20814

Clerk, U.S. Court of Appeals for the D.C. Circuit