UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES W. EDWARDS,<br><br>Defendant. | Criminal No. 03-234 (JDB) |

MEMORANDUM OPINION & ORDER

On January 22, 2004, a jury found defendant James Edwards guilty of possessing phencyclidine ("PCP") with intent to distribute. The Court sentenced him to 79 months' incarceration, to be followed by 3 years of supervised release. Upon completing his term of imprisonment in June 2009, Mr. Edwards committed a series of violations of his supervised release, including committing armed robbery and armed burglary, for which he was arrested in April 2010. See May 17, 2010 Probation Petition [ECF No. 69] at 1–2; see also Mar. 29, 2010 Probation Petition [ECF No. 67] at 1–2 (notifying the Court that Mr. Edwards tested positive for PCP and marijuana, in violation of the terms of his supervised release); June 30, 2010 Probation Petition [ECF No. 70] at 1–2 (same). On March 21, 2011, the Court revoked Mr. Edwards's supervised release and imposed a sentence of 26 months' incarceration, to be served consecutively to a 14-year sentence imposed by the D.C. Superior Court in connection with his guilty plea to the charges of armed robbery and armed burglary. See Judgment [ECF No. 77] at 1.

Mr. Edwards is currently detained at FCI Berlin, a medium-security facility in Berlin, New Hampshire, where he has served about 124 months of his combined 194-month sentence. See Gov't's Opp'n to Def.'s Pro Se Mot. Under 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov't's Opp'n") [ECF No. 82] at 6. His projected release date is October 24, 2024, see Find an Inmate, Federal Bureau

1

of Prisons, https://www.bop.gov/inmateloc/ (last accessed Sept. 10, 2020), but he has now filed a pro se motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). See Mot. of Compassionate Release ("Release Mot.") [ECF No. 79] at 1–2. Specifically, he asks the Court to "run [his] Federal violation concurrent with [his] higher sentence of 14 years in [the] Superior Court case," or—in the alternative—that the Court vacate his entire 26-month federal sentence. Id. at 2. The government opposes this motion. See Gov't's Opp'n at 1.

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (plurality opinion). The First Step Act of 2018 provides one such exception: a court may, upon motion of the Bureau of Prisons or a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see also USSG § 1B1.13 (setting forth the Commission's policy statement, which requires (among other things) that the defendant's release not pose "a danger to the safety of any other person or to the community"). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Demirtas, No. 11-cr-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020). Moreover, a court may consider a defendant's motion for such a reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Mr. Edwards's motion cannot be granted for several reasons. To start, the Court is not convinced that Mr. Edwards has satisfied § 3582(c)(1)'s exhaustion requirement. He requested a reduction in his sentence from the warden at FCI Berlin on July 29, 2020, see Release Mot. at 3, and from what the Court can tell, he did not appeal the warden's denial using the prison's administrative processes, see id. at 4 ("If you are dissatisfied with this response, you may file an appeal pursuant to Program Statement 1330.18 . . . ."). He thus did not "fully exhaust[] all administrative rights to appeal" the Bureau's failure to move for a reduction in his sentence. See 18 U.S.C. § 3582(c)(1)(A). He also did not wait "30 days from receipt" by the warden of his request for a reduced sentence to file his motion. Id. (authorizing a federal district court to "modify a term of imprisonment . . . upon motion of the defendant after . . . the lapse of 30 days from receipt" of defendant's request for a sentence reduction). Mr. Edwards signed and submitted his motion on August 8, the Clerk's Office received the motion on August 18, and it was filed on August 20. See Release Mot. at 1. All of those events occurred fewer than 30 days after the warden's receipt of Mr. Edwards's July 29 request, thus by the strict letter of § 3582(c)(1), the Court cannot grant his motion because the motion did not come from Mr. Edwards "after" the exhaustion of his administration remedies or "the lapse of 30 days" (emphasis added).

The government acknowledges this timeline, but argues that the Court may nevertheless consider the merits of his motion. See Gov't's Opp'n at 13. In doing so, the government cites United States v. Gardner, No. 14-CR-20735-001, 2020 WL 4200979 (E.D. Mich. July 22, 2020), where the district court concluded that denying a motion for compassionate release due to failure to wait 30 days before filing would be "ridiculous . . . because [the defendant] would be able to immediately refile his motion because his request with the BOP ha[d] already been denied." Id. at *4. This approach lacks a limiting principle, however, because by its logic, a criminal defendant

3

may file his motion for compassionate release immediately after the warden receives his request—rather than waiting 30 days—and hope that the district court will wait for the clock to run before resolving the motion.  Such an interpretation would effectively read the 30-day requirement out of § 3582(c)(1)(A).  The Court concludes that the better approach, adopted by at least two circuits, is to require that a defendant either exhaust the available administrative rights to appeal or wait 30 days after receipt of his request before filing a motion under § 3582(c)(1)(A).  See United States v. Alam, 960 F.3d 831, 832–33, 836 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Even overlooking this exhaustion issue, however, the Court must deny Mr. Edwards's motion on the merits.[1]  "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  Raia, 954 F.3d at 597.  Instead, the Court must look to Mr. Edwards's specific health concerns and to the conditions at FCI Berlin to determine whether "extraordinary and compelling reasons" for release exist.  Such reasons include, at minimum, those circumstances defined in the Guidelines, such as "suffering from a terminal illness" and "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," USSG § 1B1.13, comment. (n.1).  See Release Mot. at 5; Gov't's Opp'n at 10.  Some courts have also considered circumstances that are "comparable or analogous to what the Commission has

---

[1] There is broad agreement that § 3582(c)(1)(A)'s "exhaustion requirement does not implicate [federal courts'] subject-matter jurisdiction." Alam, 960 F.3d at 833; see also United States v. Ayers, Crim. No. 8-364 (JDB), 2020 WL 2838610, at *1 n.1 (D.D.C. June 1, 2020) ("turn[ing] directly to the merits, which present a clear basis for denial[ of a motion under § 3582(c)(1)(A)], rather than resolving the antecedent question of exhaustion").  The Court can thus, without exceeding its authority under Article III, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), turn to the merits of Mr. Edwards's claim and explain its alternative basis for denying this motion.

already articulated as criteria for compassionate release." United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

Under either standard, Mr. Edwards fails to demonstrate that there exist "extraordinary and compelling reasons" for his release. Mr. Edwards argues that he is at "High risk" of "fatal complications" if he contracts COVID-19 because he has "suffered from lung failure where both of [his] lungs collapse two times in a matter of weeks from [a] motor vehicle accident" in October 2000. See Release Mot. at 1. He also notes that he faces a greater risk of contracting COVID-19 because federal prison is an "incubation atmosphere," and at least one case has recently been reported at FCI Berlin, with "hundreds" in the wider prison system. Id.

But Mr. Edwards provides little evidence to support the contention that his injury almost two decades ago creates an increased risk of severe illness now. He is 39 years and does not suffer from any of the underlying health conditions identified by the Centers for Disease Control and Prevention as presenting a certainly or possibly increased risk of severe illness from COVID-19. See People at Increased Risk for Severe Illness, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed on Sept. 10, 2020). And although he states that he suffers from "lung failure"—specifically, from his "lungs collaps[ing] two times" as a result of a car accident in October 2000, see Release Mot. at 1—the only current side effect of those previous injuries appears to be self-reported "breathing difficulties . . . at night," sometimes resulting in him losing his breath and having to "gasp" for air. Def.'s Medical Records [ECF No. 83] at 2. Otherwise, Mr. Edwards denies having shortness of breath, chronic cough, or wheezing, and his roommate reports no instances of snoring or "apneic episodes." Id. Moreover, a presentence investigation report created in D.C. Superior Court in 2010 describes Mr. Edwards as "fully recovered" from his lung

5

injuries and in "good physical health." See Ex. 4 to Gov't's Opp'n ("2010 PSR") [ECF No. 82-4] at 1–2. As several other courts have recognized, such injuries—even if some sequelae still persist—do not suffice as "compelling and extraordinary reasons" for a sentence reduction absent some other aggravating factor. See, e.g., United States v. Martin, Case No. 2:16-20025-JAR-1, 2020 WL 4515363, at *5 (D. Kan. Aug. 5, 2020) (concluding no "extraordinary and compelling reasons" for a sentence reduction exist where a 34-year-old defendant had suffered a collapsed lung at birth, "from which he appear[ed] to have recovered"); United States v. Atari, No. 2:17-cr-00232-JAM, 2020 WL 2615030, at *2 (E.D. Cal. May 22, 2020) (concluding that defendant failed to demonstrate "extraordinary and compelling circumstances" where he was 36 years old and had "no further respiratory issues beyond [a] collapsed lung, which [had] happened many years ago"); United States v. Garcia, NO. 2:16CR89-PPS, 2020 WL 2520923, at *1 (N.D. Ind. May 18, 2020) (concluding that a 50-year-old prisoner who had "a history of respiratory ailments, including bronchitis, asthma and pneumonia," did not demonstrate "extraordinary and compelling reasons" for release, in part, because he did "not report any present manifestations of any of these conditions").

The conditions at FCI Berlin also pose comparatively little risk in terms of COVID-19 exposure. Despite Mr. Edwards's description of federal prisons as an "incubation atmosphere," Release Mot. at 1, FCI Berlin has so far reported only one case of COVID-19 among both prisoners and staff, and that infected prisoner has now recovered. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (listing no actively positive cases at FCI Berlin as of September 10, 2020). Under these circumstances, the Court cannot conclude that Mr. Edwards has demonstrated the existence of "extraordinary and compelling reasons" for a sentence reduction. See United States v. Denby, Case No. 06-30087, 2020 WL 3868385, at *4 (C.D. Ill.

July 9, 2020) (denying defendant's motion for compassionate release "[b]ased on [his] fairly healthy medical condition and the absence of any case of the coronavirus" at his prison facility).

Finally, even if Mr. Edwards had presented "extraordinary and compelling reasons" for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release. See United States v. Pawlowski, No. 20-2033, 2020 WL 3483740, at *1–3 (3d Cir. June 26, 2020); United States v. Holroyd, No. 1:17-cr-00234-2 (TNM), 2020 WL 2735664, at *6–7 (D.D.C. May 26, 2020); see also 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13 (requiring that the defendant's release not pose "a danger to the safety of any other person or to the community"). The § 3553(a) factors do not weigh in favor of his release. As the Court noted at Mr. Edwards's original sentencing, and reiterated in April 2006, Mr. Edwards has "a lengthy history of connection with the criminal justice system," including escape from a halfway house and a prior conviction for possession of a handgun. Apr. 7, 2006 Mem. Op. [ECF No. 61] at 16 (internal quotation omitted). Since then, Mr. Edwards has been arrested for and pled guilty in D.C. Superior Court to charges of armed burglary and armed robbery. See Gov't's Opp'n at 17. While in prison, Mr. Edwards has also committed several serious disciplinary infractions, including possessing a dangerous weapon in 2018, possessing a hazardous tool in 2013, and assaulting a staff member in 2013. See Ex. 5 to Gov't's Opp'n ("Inmate Discipline Data") [ECF No. 82-5] at 1–2.

Given these circumstances, the Court has serious concerns about Mr. Edwards's criminal history and worries that he will engage in further violent behavior if released. Although he has completed some educational courses and demonstrated a willingness for self-improvement, see Release Mot. at 2; Letter of Support [ECF No. 84] at 1, the extent of his criminal history and prison disciplinary record weigh against a reduced sentence. Indeed, the Bureau of Prisons places him at

a "high risk recidivism level."  See Ex. 3 to Gov't's Opp'n ("Inmate Profile") [ECF No. 82-3] at 1; see also United States v. Sears, No. 19-cr-21 (KBJ), 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (denying compassionate release where defendant was "at high risk of reoffending").

Given Mr. Edwards's history of recidivism and the factors in 18 U.S.C. § 3553(a), including the "nature and circumstances of his crime" and subsequent violation of the conditions of his supervised release, the Court thus concludes that his 26-month federal sentence is proper. See United States v. Jackson, No. 1:19-cr-00347 (TNM), 2020 WL 3402391, at *8 (D.D.C. June 19, 2020) (denying compassionate release where reduction in defendant's sentence "would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence" (internal quotation marks omitted)).  On that basis as well, the Court determines that his motion for compassionate release must be denied.

Accordingly, upon consideration of [79] the Motion for Compassionate Release, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:  September 12, 2020