**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** |  |
| **v.** | **Criminal Action No. 03-234 (JDB)** |
| **JAMES W. EDWARDS,** |  |
| **Defendant.** |  |

<u>**MEMORANDUM OPINION & ORDER**</u>

Defendant James Edwards moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). <u>See</u> Mot. for Compassionate Release ("Release Mot.") [ECF No. 94]. Edwards is thirty-nine years old and currently incarcerated at Federal Correctional Institute Berlin ("FCI Berlin") where he has served about 134 months of his combined 194-month sentence for armed robbery, armed burglary, and violation of supervised release conditions. <u>See</u> Gov't's Opp'n to Def.'s Pro Se Mot. for Compassionate Release ("Gov't's Opp'n") [ECF No. 93] at 4. Specifically, after completing a seventy-nine-month sentence for possessing phencyclidine ("PCP") with intent to distribute, Edwards committed a series of violations of his supervised release, including armed robbery, armed burglary, and testing positive for PCP and marijuana. <u>See</u> May 17, 2010 Probation Pet. [ECF No. 69] at 1–2; Mar. 29, 2010 Probation Pet. [ECF No. 67] at 1–2; June 30, 2010 Probation Pet. [ECF No. 70] at 1–2. On March 11, 2011, this Court revoked Edwards's supervised release and imposed a sentence of twenty-six months' incarceration, to be served consecutively with a fourteen-year sentence imposed by the D.C. Superior Court following his guilty plea to the armed robbery and armed burglary charges. <u>See</u> Judgment [ECF No. 77] at 1. His projected release date is December 4, 2024. <u>See</u> Ex. 2 to Gov't's Opp'n ("Sentence Monitoring Computation

1

Data") [ECF No. 93-2] at 1.  In August 2020, Edwards filed a similar motion for compassionate release—citing a previous lung injury and the COVID-19 pandemic—which this Court denied, finding that Edwards failed to demonstrate extraordinary and compelling circumstances for release and that the sentencing factors in 18 U.S.C. § 3553(a) weighed against sentence reduction.  United States v. Edwards, Crim. No. 03-234 (JDB), 2020 WL 5518322, at *2–4 (D.D.C. Sept. 12, 2020).

Edwards now moves again for compassionate release,[1] this time citing his lung injury, vision loss, and obesity, as well as the COVID-19 pandemic and a "recent surge" of cases at FCI Berlin.  See Release Mot. at 2, 4–5.  He also argues that the treatment he is receiving for his vision loss "is not the best medical care" available to him, mentions his desire to be with his ill stepmother, and notes due process and Eighth Amendment concerns. Id. at 1, 4–6, 8.  The government opposes his motion, "both for the reasons previously argued" and because Edwards "has now received both doses of the Moderna COVID-19 vaccine."  Gov't Opp'n at 1.  The government also contends that Edwards has not satisfied the statutory exhaustion requirements with respect to his obesity and vision loss claims, and that the § 3553(a) factors now weigh even more strongly against release because he received a disciplinary infraction for possessing a dangerous weapon since his first motion was denied.  Id. at 2.  Edwards filed a reply, see Def.'s Reply to Gov't Opp'n to Def.'s Mot. for Compassionate Release ("Def.'s Reply") [ECF No. 96], and requested appointment of counsel,[2] see Letter Requesting Counsel [ECF No. 97].  For the reasons explained below, the Court will deny Edwards's motion for compassionate release.

---

[1] This Court does not have authority to reduce the fourteen-year sentence imposed by the D.C. Superior Court.  Edwards appears to recognize this: in his original release motion, he clarified that he is asking the Court to "'run [his] Federal violation concurrent with [his] higher sentence of 14 years in [the] Superior Court case,' or—in the alternative—that the Court vacate his entire 26-month federal sentence."  Edwards, 2020 WL 5518322, at *1. Because Edwards is not scheduled to be released for over forty months, it is not clear that granting his request would result in his release.

[2] "The Court may exercise its 'discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the

Under the First Step Act of 2018, a court may, upon motion by the Bureau of Prisons ("BOP") or by a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it concludes that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020). And a court may consider a defendant's motion for reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To start, it is not clear that Edwards has satisfied § 3582(c)(1)(A)'s "strict" administrative exhaustion requirement. See Edwards, 2020 WL 5518322, at *2.[3] Edwards submitted his request to the warden on July 29, 2020, Ex. 1 to Gov't Opp'n [ECF No. 93-1] at 2, and more than thirty days have passed since. But that request sought release based on the risk of "health concerns and the severeness [sic]" of the COVID-19 pandemic and the attached explanation mentioned only his lung injury—not vision loss or obesity—as the health concern that justified release. Id. at 3. Moreover, the request did not mention his stepmother or any other family circumstances. Id. at 2.

---

interests of justice so require.'" United States v. Evans, Crim. A. No. 18-103(EGS), 2020 WL 3542231, at *3 n.3 (D.D.C. June 30, 2020) (quoting United States v. Richardson, No. 18-cr-507-LFL, 2020 WL 2200853, at *1 (E.D.N.C. May 6, 2020)). Because the issues here are straightforward, the Court finds that the interests of justice do not require appointment of counsel to assist Edwards with his § 3582(c) motion and hence denies his request. See United States v. Piles, Crim A. No. 19-292-5 (JDB), 2021 WL 1198019, at *1 n.2 (D.D.C. Mar. 30, 2021).

[3] See also United States v. Sanford, 986 F.3d 779, 782 (7th Cir. 2021); United States v. Johnson, 849 F. App'x 750, 753 (10th Cir. 2021); United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); United States v. Franco, 973 F.3d 465, 4687 (5th Cir. 2020); United States v. Alam, 960 F.3d 831, 832–33, 836 (6th Cir. 2020).

Hence, while Edwards has satisfied the administrative exhaustion requirement with respect to his lung injury, he has not satisfied it with respect to his family circumstances and may not have satisfied it with respect to his vision loss or obesity.

In United States v. Douglas, Crim. No. 10-171-4 (JDB), 2020 WL 5816244 (D.D.C. Sept. 30, 2020), this Court sided with the "weight of precedent" and held that an inmate's compassionate-release motion must be brought on the same grounds as his request to the warden. Id. at *2 (finding that an inmate who cited his heart condition in his motion but not in his request to the warden had not satisfied the exhaustion requirement); see also United States v. Williams, 987 F.3d 700, 703–04 (7th Cir. 2021). Therefore, to the extent Edwards seeks release to be with his ill stepmother, he has not satisfied the administrative exhaustion requirement.

The issue is closer, however, with respect to Edwards's vision loss and obesity claims. While the explanation attached to his request to the warden focused solely on his lung injury, and not on vision loss or obesity, it is possible that the inclusion of a broad "health concern" claim in the request itself is enough to satisfy the exhaustion requirement. See United States v. Piles, 2021 WL 1198019, at *1 (reasoning that an inmate's mention of his children in his request to the warden may satisfy the issue exhaustion requirement with respect to a subsequent motion citing need for childcare). Moreover, Edwards's medical records—which are possessed by FCI Berlin—confirm that his body mass index categorizes him as obese and that he suffers from keratoconus, a cornea disorder. Ex. 5 to Gov't's Opp'n [ECF No. 93-5]. The warden at FCI Berlin therefore arguably had notice that Edwards suffered from these conditions when reviewing his initial request. But the Court need not decide this issue because, even assuming Edwards has properly exhausted his request,[4] his motion fails on the merits.

---

[4] As this Court explained in its order denying Edwards's first motion for compassionate release, there is broad

First, Edwards has not established extraordinary and compelling reasons for release.  To be sure, the Centers for Disease Control ("CDC") recognizes one of his health conditions, obesity, as exacerbating the risk of severe COVID-19 outcomes.  See Medical Conditions, CDC (last updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Edwards also notes that treatment for his keratoconus requires hospital visits, which might increase his risk of contracting the virus.  Release Mot. at 4.  Further, FCI Berlin did have a COVID-19 outbreak this spring, with active cases topping 151 in mid-April.  Def.'s Notice of Outbreak [ECF No. 90] at 2.

Even so, the facility now reports only one active case among staff and none among inmates. COVID-19 Cases, BOP (last visited July 22, 2021), https://www.bop.gov/coronavirus/; see also United States v. Fields, Crim. No. 19-0048 (PLF), 2021 WL 780738, at *4 (D.D.C. Mar. 1, 2021) (denying release to inmate with obesity whose facility had few active COVID-19 cases); United States v. Rice, Crim. A. No. 17-128 (JEB), 2020 WL 6887790, at *3 (D.D.C. Nov. 24, 2020) (same).  Additionally, neither vision loss nor a prior lung injury are recognized by the CDC as underlying conditions.  See Medical Conditions, supra.  For one, Edwards's lung injury did not justify release even earlier in the pandemic, so the same condition cannot justify release now. Edwards, 2020 WL 5518322, at *3.  Nor is the Court convinced by Edwards's argument that his vision loss will require him to make multiple hospital visits, increasing his risk of contracting the

---

agreement that § 3582(c)(1)(A)'s "exhaustion requirement does not implicate [federal courts'] subject-matter jurisdiction."  See Edwards, 2020 WL 5518322, at *2 n.1 (citing Alam, 960 F.3d at 833); see also United States v. Ayers, Crim. No. 8-364 (JDB), 2020 WL 2838610, at *1 n.1 (D.D.C. June 1, 2020) ("turn[ing] directly to the merits, which present a clear basis for denial [of a motion under § 3582(c)(1)(A)], rather than resolving the antecedent question of exhaustion").  The Court can thus, without exceeding its authority under Article III, cf. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), turn to the merits of Edwards's claim and explain its alternative basis for denying this motion.

virus.  There is no evidence to suggest that, given the current state of the pandemic, hospital trips present a significant risk.  And if released, Edwards would still need to make hospital visits.

Since Edwards first moved for compassionate release in August 2020, the nation has made substantial progress in combatting the pandemic.  See Trends in Number of COVID-19 Cases and Deaths in the US, CDC (last updated July 15, 2021), https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (characterizing the U.S. vaccination program as a "success" and showing a significant drop in COVID-19 cases reported to the CDC beginning in January 2021).  BOP has made similar progress, administering over 186,000 vaccine doses to staff and inmates nationwide.  Gov't Opp'n at 6.  About 60 percent of inmates at FCI Berlin are fully vaccinated.  COVID-19 Vaccine Implementation, BOP (last visited July 12, 2021), https://www.bop.gov/coronavirus/.  Considering that only 48 percent of the U.S. population is fully vaccinated, it is not clear that prison presents the same heightened risk of COVID-19 exposure that it once did.  See COVID Data Tracker Weekly Review, CDC (last updated July 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html.

Edwards himself is fully vaccinated, having received his second dose of the Moderna vaccine on February 8, 2021.  Ex. 4 to Gov't Opp'n [ECF No. 93-4].  Multiple studies confirm the efficacy of the Moderna vaccine in mitigating the risk of infection and preventing severe disease.  See e.g., Mark G. Thompson et al., Interim Estimates of Vaccine Effectiveness of BNT162b2 and mRNA-1273 COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Health Care Personnel, First Responders, and Other Essential and Frontline Workers, 70 Morbidity & Mortality Weekly Rep. 495 (Apr. 2, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm;  Mark W. Tenforde et al., Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID-19 Among

6

Hospitalized Adults Aged ≥65 Years, 70 Morbidity & Mortality Weekly Rep. 674 (May 7, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm7018e1_w.   And several courts in this District have recognized that vaccines reduce the risk that inmates with underlying conditions face from COVID-19.   See, e.g., United States v. Hicks, Crim. A. No. 93-97-2 (BAH), 2021 WL 1634692 (D.D.C. Apr. 27, 2021), at *6; United States v. Martinez, No. 1:05-cr-445-1 (RCL), 2021 WL 2322456, at *2 (D.D.C. June 7, 2021).   Although the Court recognizes that new variants of the COVID-19 virus present a somewhat unknown risk, see United States v. King, Crim. A. No. 18-318 (JDB), 2021 WL 880029, at *4 (D.D.C. Mar. 9, 2021), the CDC maintains that recent studies confirm the continued effectiveness of vaccines, Variants of the Virus, CDC (last updated June 28, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html. Consequently, Edwards's medical conditions in light of the COVID-19 pandemic are not extraordinary and compelling reasons for release.

Nor is Edwards's inability to obtain a cornea replacement as treatment for his keratoconus condition.   Release Mot. at 4–7.   While at FCI Berlin, Edwards has undergone a successful corneal cross-linking procedure, see Add'l Medical Records [ECF No. 95] at 1, which is a recognized treatment for keratoconus, see Keratoconus Diagnosis & Treatment, Am. Acad. of Ophthalmology, https://www.aao.org/eye-health/diseases/keratoconus-diagnosis (last visited July 16, 2021).   Edwards nevertheless expresses interest in a cornea replacement for which he claims BOP is unwilling to pay.   Release Mot. at 7.   Because this treatment is only recommended for "severe" keratoconus cases, it is unclear whether it is necessary or would even be available to Edwards outside of prison.   See Keratoconus Diagnosis & Treatment, Am. Acad. of Ophthalmology, https://www.aao.org/eye-health/diseases/keratoconus-diagnosis (last visited July 16, 2021); see also King, 2021 WL 880029, at *3 (denying compassionate release for inmate whose

medical records indicated that he was "receiving adequate care").  Hence, the Court has no basis to find that Edwards is receiving inadequate care or that his inability to obtain a cornea replacement justifies release.

Even if Edwards had properly exhausted his claim concerning his desire to live with his stepmother—who has suffered from kidney problems, diabetes, vertigo, and a stroke—this would not merit release.  District courts across the nation have recognized that having sick parents is, on its own, not an extraordinary and compelling reason for release.  See, e.g., Piles, 2021 WL 1198019, at *2 (holding that an inmate's desire to care for his children and sick father was not extraordinary and compelling); United States v. Ayala, 16 CR 809(VM), 2020 WL 6626015, at *1 (S.D.N.Y Nov. 12, 2020) (finding that an inmate with a sick parent had not established an extraordinary and compelling reason for release).  Many inmates have sick parents, and while such circumstances are regrettable, they are typically not extraordinary or compelling.

If Edwards had presented extraordinary and compelling reasons for release, the Court may reduce his term of imprisonment only after considering the § 3553(a) factors.  18 U.S.C. § 3582(c)(1)(A); United States v. Long, 997 F.3d 342, 356 (D.C. Cir. 2021).  These include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as the need for the sentence: "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment"; "to afford adequate deterrence"; "to protect the public"; and "to provide the defendant with needed educational or vocational training, medical care or other correctional treatment," id. § 3553(a)(2).  Upon reviewing Edwards's first motion in 2020, this Court held that these factors did not weigh in favor of his release.  Edwards, 2020 WL 5518322 at *4.  Edwards has not given the Court any reason to revisit its prior § 3553(a) analysis and the Court sees none.

To start, the nature and circumstances of Edwards's offense do not support granting his motion. Although a supervised release violation is a non-violent offense, the conduct that caused the violation—armed robbery and burglary—is serious and warrants substantial prison time. See United States v. Almeida, Crim. Nos. 2:17-cr-52-DBH-01, 2:11-cr-127-DBH-01, 2021 WL 22332, at *2 (D. Me. Jan. 4, 2021) (concluding that nature and circumstances of an inmate's drug trafficking offense while on supervised release was "extremely serious" and did not favor release).

Edwards's "history and characteristics," see 18 U.S.C. § 3553(a)(1), also weigh against release. He "has a lengthy history of connection with the criminal justice system, including escape from a halfway house and a prior conviction for possession of a handgun," Edwards, 2020 WL 5518322, at *4 (citation omitted), and he has committed multiple serious disciplinary infractions while in prison that have continued to the present, Ex. 6 to Gov't Opp'n ("Inmate Discipline Data") [ECF No. 93-6]. Most recently, Edwards admitted to possessing a dangerous weapon in December 2020. Id. at 2. Though Edwards claims that the weapon did not belong to him, Def.'s Reply at 6, this story conflicts with the statement he made at his disciplinary hearing, see Ex. 7 to Gov't Opp'n [ECF No. 93-7] at 1. And while Edwards has completed educational courses and made plans for seeking housing and employment post-release, see Release Mot. at 7–9, 17–37, this does not outweigh the extent of his criminal history and disciplinary record. See United States v. Dempsey, Case No. 1:19-cr-368 (TNM), 2021 WL 2073350, at *5 (D.D.C. May 24, 2021) (denying compassionate release to inmate with three convictions and pattern of drug use). Nor has Edwards shown the sort of "remarkable transformation" that this Court has recognized when granting motions for compassionate release. See Douglas, 2021 WL 214563, at *8 (granting release to inmate with "exemplary prison disciplinary record" who earned his G.E.D., completed thousands of hours of programming, and mentored inmates).

9

The need for Edwards's sentence to reflect the seriousness of his offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public also weigh in favor of denying his motion.  As the Court explained when denying Edwards's first motion, a "26-month federal sentence is proper" in light of the underlying offense.  Edwards, 2020 WL 5518322, at *4.  Such a sentence appropriately reflects the seriousness of Edwards's offense and furthers the goals of providing just punishment and affording adequate deterrence.[5]  The need to protect the public also weighs against Edwards' release, given his history of recidivism and disciplinary infractions while incarcerated.  See United States v. Sears, No. 19-cr-21 (KBJ), 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (denying release to inmate at a high risk of reoffending).

Although the need to provide the defendant with educational or vocational training, medical care or other correctional treatment potentially weighs in favor of release, the Court ultimately concludes that this factor, too, does not justify granting Edwards's motion.  Again, the Court recognizes Edwards's success in completing several educational courses and his determination to secure employment and be a positive role model for his son.  See Release Mot. at 7–9.  Yet given his continued history of disciplinary infractions, including for possessing drugs in 2018, see Inmate Discipline Data at 2, the Court determines that Edwards would continue to benefit from further correctional treatment.  See Dempsey, 2021 WL 2073350, at *5 (citing inmate's "ongoing drug problem" and access to BOP-sponsored substance abuse treatment in denying compassionate-release motion).  To that end, Edwards has enrolled in BOP's Residential

---

[5] Because Edwards asks the Court to run his twenty-six month federal sentence concurrent to his D.C. Superior Court sentence or to vacate the federal sentence entirely, see supra note 1, granting his motion would result in him effectively serving no time for the supervised release violation.

Drug Abuse Program.  See Def.'s Reply at 6.  Considering the § 3553(a) factors as well, then, the Court will deny Edwards's motion for compassionate release.

Finally, the Court turns to Edwards's constitutional arguments—first, that he was denied due process because he was not afforded the opportunity to appeal the denial of his first motion for compassionate release, Release Mot. at 1–2, and second, that his continued confinement violates the Eighth Amendment's prohibition against cruel and unusual punishments, id. at 5–7. With respect to the due process claim, Edwards states that he did not receive notice of the denial of his first compassionate-release motion in time to file an appeal.[6]  Id. at 2.  Indeed, there is no docket note confirming that the Court's order was mailed to Edwards and hence it seems possible that Edwards was never sent the order due to administrative oversight.[7]  Nevertheless, Edwards's due process argument does not establish that he should be released—especially because he was able to bring a new motion for compassionate release.  There is no limit to refiling motions for compassionate release, see 18 U.S.C. § 3582(c)(1)(A), and Edwards's instant motion contains both new arguments for compassionate release and repeats the arguments from his first motion.  Hence, any appeal of this decision will encompass the arguments that Edwards made in his first motion.

More importantly, however, both the due process and Eighth Amendment arguments fail because "a compassionate release motion . . . is not the appropriate mechanism or vehicle to raise

---

[6] The Court denied Edwards's first motion on September 12, 2020.  Edwards claims that he never received correspondence from the Court and that he only learned of the denial after requesting that his case manager check on the status of his motion.  Release Mot. at 1–2.  Edwards attached to his reply a memorandum from his case manager that supports this claim.  Def.'s Reply at 10.  It is not clear when Edwards and his case manager learned of the denial of his first motion, but it may have been after the deadline to file notice of an appeal or move for an extension to file a notice had already passed.

[7] There were also logistical issues with Edwards's reply to the government's opposition to his first motion for compassionate release.  Although Edwards's submission was timely, the Court did not receive the reply until October 7, 2020—after it had already denied Edwards's first compassionate-release motion.  See Def.'s Resp. to Gov't's Aug. Opp'n [ECF No. 86] at 1.  The Court determined that the reply did not alter its decision and filed it on the docket on October 8.  Id.

such a claim of alleged constitutional violations." United States v. Pooler, No. 3:18-cr-00137, 2020 WL 7046964, at *7 (S.D. Ohio Dec. 1, 2020) (addressing Eighth Amendment argument in context of compassionate-release motion); see also United States v. Pelletier, No. 3:16-cr-00147-8, 2020 WL 6125052, at *2 (M.D. Tenn. Oct. 19, 2020) (same).  Edwards cites United States v. Williams, No. 3:04c495/MCR, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020), in which the court granted compassionate release to an inmate who had recently undergone quadruple coronary bypass surgery.  Id. at *3.  While Williams mentions in passing that "[t]he Eighth Amendment guarantees inmates in BOP custody the right to adequate medical care for a serious medical need," the decision is actually based on defendant's extraordinary and compelling health circumstances and analysis of the §3553(a) factors.  See id. at *4.  And, as Williams recognized, the Eighth Amendment merely requires that BOP provide "adequate medical care for a serious medical need"—not "optimal medical care or the care of an inmate's choosing."  Id.  Because Edwards seems to be receiving adequate treatment and care, there is no indication that the conditions of his confinement are cruel or unusual.  The Court therefore rejects Edwards's constitutional arguments.

## Conclusion

Accordingly, upon consideration of [94] the Motion for Compassionate Release, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.

**SO ORDERED**.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: July 22, 2021