UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES W. EDWARDS,<br>    Defendant. | Criminal Action No. 03-234 (JDB) |

**MEMORANDUM OPINION & ORDER**

Defendant James Edwards moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Edwards argues that, among other things, his heightened risk of severe COVID-19 outcomes due to his underlying health conditions constitutes an extraordinary and compelling reason warranting a reduction of his sentence. See generally Mot. for Compassionate Release [ECF No. 102] ("Release Mot."); Def's Resp. to Gov't's Opp'n to Release Mot. [ECF No. 110] ("Resp.").[1] The government opposes Edwards's motion, arguing that the threat posed by COVID-19 is not an extraordinary and compelling reason because Edwards has received three doses of a vaccine against the disease. See generally Gov't's Opp'n to Release Mot. [ECF No. 105] ("Opp'n") at 16–23. For the reasons explained below, the Court concludes that Edwards has not set forth an extraordinary and compelling reason for a reduction in his sentence. Accordingly, the Court will deny his motion.

**Background**

Edwards is approximately forty years old, Ex. B to Opp'n [ECF No. 105-1] at 1, and currently incarcerated at Federal Correctional Institute Beckley ("FCI Beckley"), Ex. F to Opp'n

---

[1] Pages in defendant's response are cited based on the PDF page numbers as listed in the docket. Edwards also handwrote page numbers, labeling the second page in the docket entry as "Page 1" and so on—to avoid confusion, these handwritten page numbers will be disregarded.

1

[ECF No. 105-5] at 1.  In 2004, this Court sentenced Edwards to 79 months in prison for unlawfully possessing phencyclidine with intent to distribute.  Judgment [ECF No. 39]; see United States v. Edwards (Edwards I), Crim. No. 03-234 (JDB), 2020 WL 5518322, at *1 (D.D.C. Sept. 12, 2020).  Edwards completed that sentence in 2009, but during the ensuing three-year period of supervised release, he was charged with and pled guilty to armed robbery and armed burglary in D.C. Superior Court.  See Edwards I, 2020 WL 5518322, at *1.  Edwards was sentenced to 168 months (fourteen years) in prison on these charges, see id., and on March 21, 2011, this Court revoked Edwards's supervised release, imposing a 26-month sentence to be served consecutive to his D.C. Superior Court sentence, see id.  Together, these two sentences total 194 months of incarceration, of which Edwards has served approximately 146 months.[2]  See Ex. B to Opp'n at 3.  His projected release date is December 4, 2024.  Id. at 1.

Edwards has filed two previous motions for compassionate release—in August 2020 and in June 2021—both of which this Court denied, concluding that Edwards failed to demonstrate extraordinary and compelling circumstances for release and that the sentencing factors in 18 U.S.C. § 3553(a) weighed against sentence reduction.  See Edwards I, 2020 WL 5518322, at *3–4; United States v. Edwards (Edwards II), Crim. A. No. 02-234 (JDB), 2021 WL 3128870, at *3, *5 (D.D.C. July 22, 2021), aff'd, No. 21-3062, 2022 WL 1769144 (D.C. Cir. June 1, 2022) (per curiam).  Edwards now moves for compassionate release a third time, raising largely the same

---

[2] Edwards now asserts that he has completed his D.C. Superior Court sentence and is serving the 26-month sentence imposed by this Court.  See Resp. at 12.  But there are still 29 months until Edwards's projected release date, see Ex. B to Opp'n at 1, indicating that he has not yet finished serving his D.C. Superior Court sentence.  As a consequence, the Court lacks the power to order Edwards's immediate release, since it cannot vacate or reduce a Superior Court sentence.  Cf. First Mot. for Compassionate Release [ECF No. 79] at 1–2 (acknowledging this fact and instead asking the Court to preemptively reduce his federal sentence or alter it to run concurrently with his Superior Court sentence).  Additionally, to the extent that Edwards asks the Court to order the Bureau of Prisons to transfer him to home confinement rather than reduce his sentence directly, see Resp. at 13, the Court lacks the power to do so.  United States v. Shabazz, 502 F. Supp. 3d 194, 199–200 (D.D.C. 2020), rev'd on other grounds, 848 F. App'x 441 (D.C. Cir. 2021).

2

arguments the Court rejected in Edwards I and Edwards II. See generally Release Mot.; Resp. His current motion, submitted to the Court by mail, was docketed on February 11, 2022. The government filed its opposition on March 18, 2022. Edwards's reply to the government's opposition was docketed on June 21, 2022.[3] The motion is now ripe for decision.

## Legal Standard

When a defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1), courts must make "two essential determinations" before reducing the defendant's sentence: whether extraordinary and compelling reasons warrant the reduction, and, if so, whether the purposes of punishment set forth in 18 U.S.C. § 3553(a) weigh in favor of reduction. United States v. Engles, Crim. A. No. 19-132 (JDB), 2022 WL 1062937, at *1 (D.D.C. Apr. 8, 2022) (quoting United States v. Johnson, 464 F. Supp. 3d 22, 30–31 (D.D.C. 2020)); see 18 U.S.C. § 3582(c)(1)(A)(i). The moving party bears the burden of establishing that reduction is warranted. United States v. Long, Crim. A. No. 10-171-1 (JDB), 2021 WL 3792949, at *1 (D.D.C Aug. 26, 2021). The bar to satisfy that burden is "exceedingly high," United States v. Shabazz, Crim A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021); "[c]utting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling,'" id.

## Analysis

In his motion, Edwards lists many circumstances that he believes warrant compassionate release. He focuses primarily on the threat that COVID-19 poses to his health, due to (1) his underlying health conditions, see Release Mot. at 1; (2) emerging variants of COVID-19, see id.;

---

[3] Edwards evidently mailed his reply brief on April 19, 2022, which was before the deadline to submit a reply. See Min. Order, Apr. 1, 2022. It was not received by the Court until June 21, 2022.

3

and (3) inadequate medical resources and facilities at FCI Beckley, see id. at 1–2, 11.[4] He also raises BOP's treatment of his visual impairment, see id. at 9–10, his intention to care for his son and elderly stepmother, see id. at 4, his plan to live with family and work at a fast-food restaurant, see id. at 3–4, 11–12, 14; Resp. at 14, 17–18, and an alleged misapplication of his accrued time credits, see Release Mot. at 2–3, as extraordinary and compelling reasons warranting sentence reduction. The Court will address these proffered reasons in turn.

## I. Risk of Severe COVID-19 Outcomes

Edwards argues that several factors put him at a heightened risk of experiencing severe COVID-19 outcomes and that the resulting threat to his health warrants a reduction in his sentence. He points to his underlying health conditions, including obesity and prediabetes (both of which are recognized by the CDC as conditions that put individuals at a higher risk level for severe COVID-19 outcomes). See Resp. at 2, 19.[5] Similarly, Edwards contends that the emergence of novel COVID-19 variants, like Delta and Omicron, will continue to pose a threat to his health going forward. See Release Mot. at 1. He also asserts that the staff at FCI Beckley do not wear masks and make light of the COVID-19 pandemic. See id. at 11. Lastly, Edwards claims that FCI Beckley is not adequately prepared to provide emergency medical care, see id. at 1–2: Edwards

---

[4] Four pages of the defendant's motion appear twice in the version of the motion filed on the docket, appearing first as pages 5–8 and then again as pages 9–12. The Court will cite these pages using the second set of page numbers.

[5] Edwards also notes that he suffered a collapsed lung in an automobile accident in October 2000, and he suggests that this "past history of lung damage" is an underlying health condition that warrants compassionate release. See Release Mot. at 1. But the Court has previously observed that Edwards has "provide[d] little evidence to support the contention that his injury almost two decades ago creates an increased risk of severe illness now." Edwards I, 2020 WL 5518322, at *3. Indeed, as explained in Edwards I, a pre-sentence report prepared in D.C. Superior Court in 2010 described him as being in good health and as having fully recovered from this lung injury. See id. Edwards himself reported that his only current side effects from this injury are occasionally losing his breath at night and having to gasp for air. See id. In his current motion, Edwards has not presented evidence of any new symptoms that would indicate a different relationship between his lung condition and the threat posed by COVID-19. Consequently, for the same reasons as in Edwards I and Edwards II, the Court concludes that Edwards's lung condition does not amount to an extraordinary and compelling reason for release. See 2020 WL 5518322, at *3; 2021 WL 3128870, at *3.

describes witnessing an inmate pass away after receiving inadequate care, see id., and he alleges that the prison lacks accessible defibrillators and stretchers in each housing unit, see id. at 2.[6]

Preliminarily, Edwards's assertion that COVID-19's immediate threat to his health warrants compassionate release is significantly undercut by the fact that—as noted above—this Court is unable to grant his immediate release. Even if the Court did grant Edwards's motion, he would remain incarcerated—and, hence, exposed to the conditions he alleges constitute extraordinary and compelling reasons for release on a daily basis—until the completion of his D.C. Superior Court sentence.

Moreover, Edwards has received both doses of the Moderna vaccine, as well as a Moderna booster. Ex. A to Opp'n [ECF No. 106-1] at 82; Opp'n at 2. As the Court has noted, "[h]aving received (or refused) a vaccine against COVID-19 fundamentally changes the compassionate release analysis . . . ."[7] Engles, 2022 WL 1062937, at *3. Though both obesity and prediabetes increase the risk of severe COVID-19 outcomes, see Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022), the protection offered by the vaccine more than

---

[6] In his response to the government's opposition, Edwards also makes a series of allegations about the ventilation at FCI Beckley and purported attempts by BOP to cover up the status of COVID-19 within its facilities. See Resp. at 3, 5. The Court has nothing before it other than Edwards's conclusory allegations suggesting that FCI Beckley's quarantine procedures are inadequate or that prison staff are intentionally downplaying the severity of the COVID-19 situation. Given this lack of support, and the fact that Edwards made these allegations for the first time on reply and without first presenting them to BOP (as required by 18 U.S.C. § 3582(c)(1)(A)), the Court need not—and arguably may not—consider them.

[7] Not only is Edwards himself fully vaccinated, but indeed COVID-19 vaccines have been made available to all staff and inmates throughout BOP. See Opp'n at 8. The government claims that 75.1% of inmates at FCI Beckley are fully vaccinated, id. at 22, and based on more recent data, that number is now over 77%, see COVID-19 Vaccine Implementation, FCI Beckley, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 20, 2022) (indicating 1,272 "full inmate inoculations completed" at FCI Beckley); FCI Beckley, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/bec/ (last visited July 20, 2022) (listing population of FCI Beckley as 1,640 inmates). The number of "inmate inoculations completed" at a facility does not necessarily translate into the number of current inmates at that facility who are vaccinated, since some inmates who received vaccinations may have been released and some unvaccinated inmates may have arrived. See Engles, 2022 WL 1062937, at *3 n.5. But while the percentage of current inmates that are vaccinated is likely not 77%, a significant majority of the occupants of FCI Beckley do appear to be fully vaccinated.

outweighs that heightened risk, see United States v. Wilson, Crim. A. No. 96-319-01 (CKK), 2021 WL 5292457, at *4 (D.D.C. Aug. 6, 2021) (obesity); United States v. Clark, Crim. No. 10-0133 (PLF), 2021 WL 5630795, at *3–4 (D.D.C. Dec. 1, 2021) (prediabetes); see also United States v. Bikundi, Crim. A. No. 14-20-1 (BAH), 2022 WL 1451402, at *3–4 (D.D.C. May 9, 2022) (concluding that a general fear of COVID-19 is not extraordinary and compelling for a fully vaccinated defendant whose only risk factor is obesity).  Moreover, the Court already considered Edwards's obesity when it denied his 2021 motion for compassionate release, see Edwards II, 2021 WL 3128870, at *3, and he has not put forth any new evidence here to suggest that his obesity poses a greater risk now than it did last year.

Edwards's vaccination status also mitigates the risk that future COVID-19 variants could pose to his health.  The Moderna vaccine has proven to be effective against the COVID-19 variants that have developed thus far.  See COVID-19 Vaccines Work, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated June 28, 2022).[8]  While the Court cannot predict the future course of the pandemic and, as it recognized in denying Edwards's last motion, "new variants of the COVID-19 virus present a somewhat unknown risk," Edwards II, 2021 WL 3128870, at *3, the mere possibility that a new, vaccine-resistant variant might arise is not substantial enough to warrant reducing Edwards's sentence.  Moreover, despite Edwards's assertion that the temporary nature of the protection afforded by vaccines means he will still not be protected from COVID-19 going forward, see Resp. at 4–5, there is no indication at the present time that BOP has failed or will fail to provide the necessary

---

[8] To the extent Edwards argues that variants like Omicron and Delta themselves constitute extraordinary and compelling reasons for release, the Omicron variant has posed a lower risk of severe outcomes than previous variants. See Press Briefing by White House COVID-19 Response Team and Public Health Officials (Dec. 29, 2021), https://www.whitehouse.gov/briefing-room/pressbriefings/2021/12/29/press-briefing-by-white-house-covid-19-response-team-and-public-healthofficials-76.

vaccines to protect Edwards from COVID-19 variants, see Opp'n at 8 ("BOP has committed to making the vaccine available to all staff and inmates who choose to receive it as quickly as possible.").

Furthermore, although Edwards argues that FCI Beckley staff are not taking the pandemic sufficiently seriously, at present only two inmates at FCI Beckley are positive for COVID-19, and no staff members are positive for COVID-19. COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last accessed July 20, 2022); see also, e.g., Edwards II, 2021 WL 3128870, at *3 (noting that, at that time, Edwards's site of incarceration "report[ed] only one active case among staff and none among inmates" as a fact cutting against compassionate release and collecting similar cases). Even if, as Edwards alleges, FCI Beckley staff are not strictly following BOP protocols, that laxity clearly is not leading to an outbreak of cases. While each of Edwards' allegations about FCI Beckley staff's behavior is concerning, and—given the gravity of the pandemic—the Court is sympathetic to Edwards's fears, "speculative claims that [the prison's] protective measures are inadequate and the staff are likely spreading the virus" are not enough to qualify as extraordinary and compelling reasons for release. United States v. Jackson, No. 19-cr-00347-TNM-1, 2020 WL 6445867, at *3 (D.D.C. Nov. 3, 2020); see also United States v. Daniel, No. 1:17-cr-233 (TNM), 2021 WL 5416629, at *2 (D.D.C. Nov. 18, 2021) (concluding that an extraordinary and compelling reason did not exist despite the defendant's claims of an unsafe environment when there were "only two active cases at the facility").

Lastly, to the extent that Edwards argues that the prison staff's failure to resuscitate another inmate forecasts an inability to care for him should he contract COVID-19, the Court is not persuaded that this warrants a reduction in Edwards's sentence. Although ongoing inadequate care can warrant sentence reduction if there is sufficient evidence to demonstrate BOP's inability to

7

treat the defendant's medical needs, e.g., United States v. Beck, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019), the mere possibility of inadequate medical care in a hypothetical future situation is not an extraordinary and compelling reason for immediate sentence reduction, Engles, 2022 WL 1062937, at *4; see, e.g., United States v. Zubkov, 460 F. Supp. 3d 450, 456–67 (S.D.N.Y. 2020) (focusing on the defendant's "current health condition and medical care" and concluding that "[w]hether or not [the prison] lacks particular medical equipment or may struggle to provide for the needs of other inmates during this pandemic is not now relevant to whether [the defendant] warrants compassionate release").  Additionally, the alleged sub-par medical equipment at FCI Beckley relates to all prisoners housed there, suggesting that it is not an extraordinary and compelling reason for the purposes of Edwards's individual motion.  See Engles, 2022 WL 1062937, at *4 ("[T]he conditions at [the defendant's site of incarceration] . . . are applicable to every one of the more than 3,000 inmates [housed there] . . . .  As a consequence, without a showing of how these conditions specifically threaten [the defendant], they cannot support his compassionate release.").

At this point in the pandemic, given Edwards's vaccination against COVID-19, the high vaccination rate among his co-inmates, and the minimal number of COVID-19 cases at FCI Beckley, Edwards's concerns about contracting COVID-19 do not warrant reducing his sentence.  See United States v. Morales, Crim. A. No. 06-248-4 (JDB), 2021 WL 4622461, at *5 (D.D.C. Oct. 7, 2021).

**II. Edwards's Other Claims**

In addition to his concerns about the threat of experiencing severe COVID-19 outcomes, Edwards proffers several other reasons in support of his motion for compassionate release.

8

Edwards was diagnosed with keratoconus, a cornea disorder, in 2015.  Release Mot. at 9. While at his previous place of incarceration, Edwards underwent a successful corneal cross-linking procedure, a treatment for keratoconus, on his right eye.  Edwards II, 2021 WL 3128870, at *4. Edwards asserts that this procedure did not help his vision and that he has since requested a cornea replacement.  See Release Mot. at 9.  Edwards made a similar claim in his previous motion for compassionate release.  See Second Mot. for Compassionate Release [ECF No. 94] at 3–7.  But the Court rejected that argument, noting that BOP is required to "provide 'adequate medical care for a serious medical need'—not 'optimal medical care or the care of an inmate's choosing.'" Edwards II, 2021 WL 3128870, at *6 (quoting United States v. Williams, Case No. 3:04-cr-95/MCR, 2020 WL 1751545, at *4 (N.D. Fla. Apr. 1, 2020)).  The Court concluded in Edwards II that BOP's denial of a cornea replacement did not qualify as inadequate care because that procedure is only appropriate for severe cases of keratoconus, meaning that Edwards would not necessarily be able to receive a cornea replacement even if he were released.  2021 WL 3128870 at *4.

In his current motion, Edwards now contends that BOP has also failed to provide him with special contact lenses designed to ameliorate his keratoconus and that he could receive better medical care if he were released.  See Release Mot. at 9–10.  As stated above, persistent inadequate medical care can constitute an extraordinary and compelling reason warranting sentence reduction if the defendant's medical needs require release.  See Beck, 425 F. Supp. 3d at 581–82.  But the record indicates that the physician at FCI Beckley is in the process of remedying the delay, see Opp'n at 19 n.12 ("On January 4, 2022, [Edwards's] physician at FCI Beckley requested an evaluation and fitting for the specialty contact lenses."), which the government contends was caused by Edwards's failure to "complete the mandatory contact lenses training" at his previous

9

place of incarceration, see id. (citing Ex. A to Opp'n at 6, 8).  Since it does not appear that Edwards's delayed receipt of the specialty contact lenses has been caused by inadequate care, the Court is not persuaded that FCI Beckley's treatment of his keratoconus warrants a reduction in Edwards's sentence.  Cf. Beck, 425 F. Supp. 3d at 580–82 (granting compassionate release due to unexplained delays in care and failure of BOP to abide by the advice of doctors).

Edwards also argues that his intention to care for his son and his stepmother—the latter of whom suffers from decreased kidney function—supports release.  See Release Mot. at 4.  At the outset, it is worth noting that the Court previously addressed this point in Edwards II, concluding that his desire to care for his child or sick parent does not constitute an extraordinary and compelling reason warranting a reduction in Edwards's sentence.  See 2021 WL 3128870, at *4 (citing United States v. Piles, Crim. A. No. 19-292-5 (JDB), 2021 WL 1198019, at *2 (D.D.C. Mar. 30, 2021)).  It does not appear that Edwards has presented any new evidence pertaining to this aspect of his motion.  The need to care for an ailing parent generally does not rise to the level of "extraordinary," unless the defendant is the "only available caregiver" for this parent.  See Shabazz, 2021 WL 4306129, at *3.  Edwards's motion suggests that he hopes to help care for his stepmother, but it does not indicate that she is currently not receiving necessary care or that he is her "only available caregiver."  See Release Mot. at 4.

Likewise, while caring for a minor child can be considered an extraordinary and compelling reason for release in limited circumstances, such as in the event of the death of a child's other parent, the availability of an adequate alternative caregiver "substantially undermines the rationale behind releas[e]."  United States v. Simmons, Crim. No. 15-0025 (PLF), 2021 WL 5074741, at *5 (D.D.C. Nov. 2, 2021).  In his motion, Edwards does not say who has cared for his

10

son for the last eight years, but there is no indication that his son is without an adequate caregiver.[9] Though Edwards's desire to "reinsert himself in his son's life," Release Mot. at 4, is understandable and admirable, the Court cannot conclude that it is extraordinary or compelling.

Edwards next contends that, by completing several educational and behavioral programs during his incarceration, he has earned time credits pursuant to the First Step Act which the staff at FCI Beckley have mistakenly failed to apply to his sentence.[10] See Release Mot. at 2–3. The First Step Act provides that eligible inmates can earn ten days of time credit for every thirty days of successful participation in "recidivism reduction programming or productive activities." First Step Act of 2018, Pub. L. No. 115-391, § 101, 132 Stat. 5194, 5198 (codified at 18 U.S.C. § 3632(d)(4)(A)(i)). Edwards has completed two health-focused classes, multiple vocational classes, and 2,500 hours of an apprenticeship that he asserts should count towards these time credits. See Release Mot. at 2–3.

Edwards's argument fails because compassionate release is not the proper mechanism for bringing this claim: an inmate wishing to challenge a BOP decision regarding time credit must bring that challenge via a habeas petition under 28 U.S.C. § 2241. See, e.g., United States v. Lawson, Crim. A. No. 03-282-1 (JDB), 2022 WL 2663887, at *12 & n.26 (D.D.C. July 11, 2022) (citing Edwards v. Balisok, 520 U.S. 641, 643–44 (1997) ("[T]he sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus . . . .")); Dufur v. U.S. Parole Comm'n, 314 F. Supp. 3d 10, 16 (D.D.C. 2018) ("[A] federal prisoner . . . '[must] bring his

---

[9] Edwards indicates that his own stepmother, Ms. Edwards, previously cared for his son from the age of "1 y[ea]rs old until he was 3 because his mom couldn't care for him properly." Release Mot. at 4.

[10] Edwards acknowledges that these credits cannot be applied to Superior Court sentences. See Release Mot. at 3; see also Fed. Bureau of Prisons, First Step Act Approved Programs Guide 2 (July 2022), available at https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_0622.pdf ("[First Step Act time credits] do not apply to inmates convicted in DC Superior Court."). Instead, he appears to argue that these credits should be applied prospectively to the 26-month federal sentence he has not yet begun serving. Release Mot. at 3.

claim in habeas . . . if success on the merits will necessarily imply the invalidity of confinement or shorten its duration.'" (internal quotation marks omitted) (quoting Davis v. U.S. Sent'g Comm'n, 716 F.3d 660, 666 (D.C. Cir. 2013))), aff'd, 34 F.4th 1090 (D.C. Cir. 2022).  Hence, if Edwards seeks to demonstrate that he has been improperly denied time credits, he must file a petition for a writ of habeas corpus in the district of his incarceration—not the district of sentencing—and name the warden of FCI Beckley as the respondent.  E.g., Lawson, 2022 WL 2663887, at *12 (citing Dufur, 34 F.4th at 1096).  In light of this mandatory habeas-channeling rule, the Court lacks the power to remedy BOP's alleged error, nor will the Court consider that allegation as a reason supporting release "when no attempt has been made to pursue the exclusive judicial remedy for correcting" it.  Id. at *13.[11]

Finally, Edwards indicates that he has developed a plan for his potential release.  He intends to be driven by his brother to his stepmother's home, see Resp. at 18, where he will live with and care for his stepmother and son,[12] see Release Mot. at 4; once he has saved enough money, Edwards plans to buy his own home, see Resp. at 15.  Additionally, Edwards expresses his intention to take part in D.C.-based programs for ex-felons, id. at 18, and he indicates that he has a job lined up at a fast-food restaurant, see Release Mot. at 4.  The Court has acknowledged the importance of a detailed release plan that includes employment, see Shabazz, 2021 WL 4306129, at *4 n.4; see also United States v. Davies, 469 F. Supp. 3d 175, 180 (S.D.N.Y. 2020), and applauds Edwards for planning for a successful release.  But to the extent that Edwards argues that his

---

[11] In addition, Edwards's claim is unlikely to succeed on the merits.  Section 3632(d)(4)(B)(ii) stipulates that federal inmates cannot earn time credits for programming completed "during official detention prior to the date that the prisoner's sentence commences."  18 U.S.C. § 3632(d)(4)(b)(ii).  Thus, classes Edwards completed while serving his Superior Court sentence likely do not entitle him to First Step Act credits that can be applied to his yet-to-commence federal sentence.

[12] The government noted in its opposition that it was unclear whether Edwards's stepmother would allow him to live with her.  See Opp'n at 27–28.  But Ms. Edwards has since indicated in a letter mailed to the Court that she is indeed willing to have Edwards live at her home post-release.  Letter in Supp. of Mot. for Compassionate Release [ECF No. 109].

release plan is itself an extraordinary and compelling reason warranting sentence reduction, the Court disagrees. Every inmate moving for compassionate release is expected to provide a release plan, see 28 C.F.R. § 571.61(a)(2); hence, creating a detailed plan does not sway the Court in favor of granting release, see Piles, 2021 WL 1198019, at *2 n.3.[13]

## CONCLUSION

The Court concludes that Edwards has not demonstrated the existence of an extraordinary and compelling reason warranting a reduction in his sentence. Accordingly, upon consideration of [102] Edwards's motion for compassionate release, and the entire record herein, and for the reasons set forth above, it is hereby

**ORDERED** that the motion is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: July ##, 2022

---

[13] Additionally, for many of the reasons set forth in the Court's prior opinions, the Court remains unconvinced that the 3553(a) factors support his release in light of his previous recidivism and his extensive disciplinary record in prison. See Edwards I, 2020 WL 5518322 at 4; Edwards II, 2021 WL 3128870 at 4–5.